# BOVEY-SHUTE LUMBER COMPANY, a Corporation, v. CHARLES LAKEFIELD.

### (147 N. W. 720.)

**Judgment by default — motion to vacate — failure of attorney to answer — denial of motion — abuse of discretion.**

Facts examined, and *held* that denial of defendant's motion to vacate a default judgment, taken against him because of failure of his attorney to answer, was an abuse of judicial discretion, and erroneous.

Opinion filed May 27, 1914.

Appeal from the County Court of Increased Jurisdiction of Ward County, *N. Davis,* J.

Reversed.

*Grace & Bryans,* for appellant.

There was a clear abuse of discretion on the part of the trial court in denying defendant's motion to set aside the judgment taken against him by default. Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581; Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 381; Bloor v. Smith, 112 Wis. 340, 87 N. W. 870; Whereatt v. Ellis, 70 Wis. 207, 5 Am. St. Rep. 164, 35 N. W. 314; 23 Cyc. 942; Cline v. Duffy, 20 N. D. 525, 129 N. W. 75; Citizens' Nat. Bank v. Branden, 19 N. D. 489, 27 L.R.A.(N.S.) 858, 126 N. W. 102.

Affidavits presented by the moving party cannot be contradicted as to merits. Racine-Sattley Mfg. Co. v. Pavlicek, 21 N. D. 222, 130 N. W. 228; Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581; Griswold Linseed Oil Co. v. Lee, 1 S. D. 531, 36 Am. St. Rep. 761, 47 N. W. 955; Gracier v. Weir, 45 Cal. 53.

*Greenleaf, Bradford, & Nash,* for respondents.

On application to reopen default judgment, defendant is not entitled to an order vacating judgment as a matter of right, but such application is directed to the sound discretion of the court. Freeman, Judgm. § 106; Cline v. Duffy, 20 N. D. 525, 129 N. W. 75; Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581; Nichells v. Nichells, 5 N. D. 125, 33 L.R.A. 515, 57 Am. St. Rep. 540, 64 N. W. 73.

28 N. D.—8.

Where the motion is heard on contradictory affidavits, and is denied, the decision will rarely be disturbed.   Poirier v. Gravel, 88 Cal. 79, 25 Pac. 962; Swanstrom v. Marvin, 38 Minn. 359, 37 N. W. 455; Flanigan v. Duncan, 47 Minn. 250, 49 N. W. 981; Buttz v. Campbell, 15 S. C. 614; Palmer v. Harris, 98 Ill. 507.

Aside from a meritorious defense, the moving party must show diligence to prevent a default.   Cline v. Duffy, 20 N. D. 525, 129 N. W. 75; Wheeler v. Castor, 11 N. D. 347, 61 L.R.A. 746, 92 N. W. 381; Smith v. Watson, 28 Iowa, 218; 6 Enc. Pl. & Pr. 185; Harlan v. Smith, 6 Cal. 173; Jelley v. Gaff, 56 Ind. 331.

Affidavits in opposition to the motion may be presented to show avoidance or to traverse the facts submitted by the moving party.   Minnesota Thresher Mfg. Co. v. Holz, 10 N. D. 16, 84 N. W. 581.

Goss, J.   This is an appeal from a judgment of the county court of Ward county, denying defendant's application to vacate a default judgment.   The application is accompanied with proposed answer and affidavits of merit.   Personal service *of summons and complaint* was had August 7, 1912.   The same are subscribed by a firm of attorneys of Minot, who, according to the affidavit of one of them, maintain a branch office at Sherwood, with one Lee as their associate attorney at that place.   After service of summons and complaint upon defendant, and on August 10, 1912, defendant consulted and discussed his case with Lee in Sherwood, near which place defendant resided, and Lee, either pursuant to defendant's request or at his own suggestion, communicated by letter with his Minot associates concerning the matter in suit.   The time to answer expired August 17th, and Lee interposed no answer.   His explanation is that he acted under the supposition that defendant understood that he, Lee, was an associate counsel for plaintiff with the Minot firm, and that, from statements made by defendant, he assumed that defendant desired to pay the claim, and that settlement was but a matter of ascertaining the amount due.   Lee recites by affidavit that defendant deposited with a Sherwood bank $105 "to prevent the attorneys from taking a judgment against him until he could be informed as to the correct amount," and that defendant further deposited in said bank "on the 30th day of August the additional sum of $11.60; that thereafter on the 31st day of August

defendant came to the residence of deponent (Lee), and then and there stated to deponent that he thought he would fight the case, as he had changed his mind about the matter, and would go to Minot and procure attorneys there to handle the case for him . . . that deponent stated to him that he had a poor chance of winning, but that it was his privilege." "Deponent further deposes that he has never represented to Lakefield that he was not in the employ of his Minot associates, and distinctly stated to Lakefield, in response to his request that deponent fight the case for him, that deponent was in their employ, and that he would have to go to some other place for an attorney." It is also shown that the firm sign of the Minot attorneys is displayed at the "doorway of the office of said firm at Sherwood," wherein Lee had his office. Judgment was entered as by default for want of answer on September 5th, and on the succeeding day proposed answer, together with affidavits of merit and notice of motion, were served on the Minot counsel by the present attorneys for defendant.

Plaintiff's affidavit of merit alleges that after he was served with summons and complaint he went to Lee and employed him "to look after and handle for him said action in all respects." "That he turned over to him the summons and complaint, and all receipts he had in connection with said action, and that Lee informed him that he would look after the case for him, and that he would put in an answer . . . that the said Lee led affiant to believe that he was looking after the case for him and in his behalf, and that he had put in an answer to the complaint, thereby misleading affiant until the plaintiff took judgment against him by default. And that after such judgment was taken Lee informed this affiant that no judgment would be taken, that he was looking after the same, and that Lee informed this affiant that, if he could not handle the same, he would inform him, that he would let him know in time so that he could get other counsel before judgment would be taken against him by default; . . . that on the 30th day of August, 1912, affiant received a letter from the attorneys for the plaintiff, stating that they understood through Lee, of Sherwood, that affiant wanted to settle the case, and that, if settlement was not made, they would proceed to take out execution on the judgment that they had recovered on the same. That this was the first information that your affiant had as to the said Lee being associated with the firm

of attorneys for the plaintiff. That he then immediately went to Sherwood and saw Lee, who then informed him that he could do nothing with the case; that affiant then went right to the city of Mohall . . . and employed his present counsel to look after his interest in the case. That Lee had at all times been misleading this affiant and working for the plaintiff in the action, and leading affiant to believe that he was working for him; that, by reason of said misrepresentation and fraud on the part of Lee, judgment has been taken against affiant by default, of which he had no knowledge or information until he received the letter from attorneys for the plaintiff."

Justice to Lee requires mention in this connection of the fact that no judgment was taken until September 5th, five days after this affidavit was signed, also that plaintiff does not deny depositing the money in the Sherwood bank to meet this claim. The complaint is for a balance of $95.70 claimed upon a promissory note dated November 8, 1907, for $157.35 and interest, and due December 1, 1907. The verified answer denies execution of this note, but alleges that another was given which has been paid in full, and now is in the possession of the defendant; and this answer is accompanied by the affidavit of one of his present attorneys that he "now has the receipts and notes that show that said account has been paid in full, about five years ago, and that defendant has a good defense to said action." The moving papers are dated August 30th and 31st, the latter the date of the verification to the affidavits of merit and proposed answer. These seemingly corroborate defendant's statement of his belief that judgment had been taken against him by default prior to August 31st, on which date he terminated Lee's employment, if Lee was employed by him as an attorney, and this in turn lends credence to defendant's statement that his first knowledge of any association of Lee with the record attorneys of plaintiff was when he received the information from them that they had taken judgment against him prior to August 31st.

It is not necessary to this decision to determine upon *ex parte* affidavits whether the charges of fraud made against Lee are true. The counter affidavit of Lee does not deny plaintiff's statement that he actually employed Lee as his attorney, while it does affirmatively disclose that it was on August 31st that Lee first informed defendant that he was indirectly in the employ of the plaintiff. The fair inference is that

Lee had not earlier disclosed this fact, or he would certainly have stated so. The reasonable inference from these affidavits then is that Lee assumed that defendant knew his connection, virtually as a member of the firm of attorneys who had subscribed the summons and complaint in the action, and, from what transpired, assumed that the case would be settled and that a defense would be unnecessary, and supposedly negotiated with defendant, with no intent to mislead him, and this is borne out by the fact that judgment was not actually taken against defendant for nearly a week after he had procured other counsel. If Lee is to be criticized, it is because he did not actually inform defendant of the fact of his employment on the other side of the case, immediately upon defendant's coming to him. It is not shown that he charged or received of defendant any retainer for his services, and if defendant had retained him, no doubt it would be disclosed. But the decisive fact is that it is very probable that defendant consulted and confided in Lee as his attorney, and depended upon him to put in an answer, or do whatever was necessary to protect his interests and prevent default judgment being taken against him, if defendant had, or thought he had, a defense at that time. As to the merit of the defendant's defense, we must take his affidavits of merit and the proposed answer at their face, and therefore assume that he has a meritorious defense. The deposit transactions can be considered only on the question of excusing delay in interposition of answer, and not to impeach the merit of the defense. If Lee be considered as an associate with the attorneys of plaintiff in the case, as he must be taken to be under his own and the other affidavits, then the act of the plaintiff's associate attorney must be considered as having contributed to, if not wholly caused, defendant's default in answer, and this without defendant's knowledge thereof and without his intent to default. Even in case of doubt as to whether he has been thus misled or not, the doubt should be resolved in his favor, and bring about a trial upon the merits, instead of a denial of defense on the merits under these circumstances. The denial of the application to vacate judgment, and for leave to answer, was clearly an abuse of discretion; and the order for judgment and the judgment entered will be vacated, and the proposed answer will be filed. Appellant will recover his costs and disbursements taxable on this appeal.